## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

| | | |
|---|---|---|
| RYAN BAUGH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO.: 2:24-cv-10036 (SKD) |
| | * | |
| CENTRAL INTELLIGENCE | * | HON. SUSAN K. DECLERCQ |
| AGENCY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

### ISSUES PRESENTED

1.     Whether Plaintiff states a claim under the Administrative Procedure Act for alleged violation of Executive Order 12,968 and the other cited authorities.

2.     Whether Plaintiff states a claim for mandamus relief under 28 U.S.C. § 1361.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Atlantic Richfield Co. v. DOE*, 769 F.2d 771 (D.C. Cir. 1984)

*Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)

*Moyar v. DOD*, No. 23-5085, 2024 U.S. App. LEXIS 13146 (D.C. Cir. May 31, 2024)

*Nat'l Ass'n of Gov't Emps. v. White*, 418 F.2d 1126 (D.C. Cir. 1969)

*Wonders v. Dep't of the Army*, 659 Fed. App'x 646 (Fed. Cir. 2016)

## **INTRODUCTION**

Plaintiff Ryan Baugh ("Baugh") commenced this litigation under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, to compel Defendant Central Intelligence Agency ("CIA") to comply with Section 5.2 of Executive Order 12,968 ("E.O. 12,968" or "the Order"), Intelligence Community Policy Guidance 704.3 ("ICPG 704.3"), and Agency Regulation 7-7 ("AR 7-7") and release to him all information relevant to the adjudication of his security clearance applications, to the extent that it is releasable under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a (collectively "FOIA/PA"). Rather than simply following these rules and releasing the relevant, non-exempt information, CIA has instead taken a hardline position and argued that these rules are judicially unenforceable because they include language claiming that they do not create an independent private right of action, because Baugh allegedly does not have a clear and undisputed right to his investigative file, because CIA allegedly does not have a clear duty to provide him with his investigative file, and because Baugh allegedly was required to exhaust administrative remedies before filing a mandamus action. ECF No. 10 at PageID.51. All of these arguments are meritless and should be rejected.

## ARGUMENT

Before engaging in a point-by-point refutation of CIA's arguments, it is important to first address two misleading statements that CIA makes before engaging in serious argumentation: one minor and one major. The first appears as an apparently minor factual comment but carries with it a more serious implication, in which CIA recounts the exchanges between Vivian Roberts, "an employee of the United States," and Baugh's undersigned counsel. *Id.* at PageID.57-58. CIA cites Baugh's complaint, ECF No. 1 at PageID.6-9, for this narrative, but omits the fact that the name "Vivian Roberts" is identified as a pseudonym in that document. *Id.* at PageID.7 ¶ 30. In other words, while Baugh does not have any reason at this juncture to doubt that the person with whom his counsel communicated was an employee of the United States, her name was most likely not Vivian Roberts, and CIA's subtle insistence that it was is simply more gamesmanship designed to obscure the facts of this case like its refusal to admit that it is the proper party Defendant, *see* ECF No. 10 at PageID.50 n.1, forcing the Court to adjudicate this Motion without accurate information.

CIA's second attempt at misdirection is more substantive. It spends two paragraphs stating the principle that "a decision denying or revoking a security clearance is not subject to judicial review," citing, *inter alia*, the seminal case in this area: *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988). ECF No. 10 at

4

PageID.60-61 (listing cases). However, despite stating that this Circuit has

"dismissed such claims for failure to state a claim or for lack of jurisdiction," *id.* at

PageID.61, CIA never actually seeks to dismiss the case based on *Egan* and in fact

explicitly disclaims seeking to dismiss the case for lack of jurisdiction. *See* ECF

No. 26 at PageID.187 ("Defendant did not file a motion to dismiss for lack of

jurisdiction."). Because CIA does not flesh out this argument but instead asks the

Court to just accept that it is relevant without any further discussion, Baugh will

not further belabor it, except to say that while *Egan* does undeniably preclude

judicial review of actual agency decisions to deny or revoke security clearances in

most circumstances, it is not "unanimously held" that its scope extends beyond

such specific circumstances.[1]

For the remainder of this Response, Baugh will address CIA's arguments in

roughly the order in which they are raised, for simplicity of reading. First, the fact

that E.O 12,968 and the other cited rules purport to create no private right of action

---

[1] If the Court is inclined to consider CIA's implied argument, Baugh respectfully requests leave to brief the *Egan* matter separately, since a thorough discussion of that particular issue could fill a brief on its own, *see*, *e.g.*, Mot. Leave File *Amici Curiae* Br. & Br. *Amici Curiae* Nat'l Sec. Legal Academics Supp. Petitioner (filed Nov. 3, 2020), *Campbell v. McCarthy*, No. 20-435 (S. Ct.), *available at* http://www.supremecourt.gov/DocketPDF/20/20-435/159454/20201102235600117_2020-11-02%20-%20A%20-%20Amici%20brief.pdf (last accessed June 18, 2024), and entire articles have been written about it, *see* Louis Fisher, Judicial Interpretations of Egan, Law Library of Congress (2009), *available at* http://www.loufisher.org/docs/ep/466.pdf (last accessed June 18, 2024).

is immaterial in a case like this brought under the APA and Mandamus Act. Second, Baugh clearly has a clear and undisputed right to his investigative file, and CIA has an equally clear duty to provide him with it. Lastly, Baugh was not required to exhaust administrative remedies before filing a mandamus action, but even if he was, he did.

## I.   NO EXPRESS PRIVATE RIGHT OF ACTION IS REQUIRED

CIA's argument to the contrary fails for two primary reasons. First, while it does cite to a few other cases from other circuits, CIA's sole source of authority in this Circuit is a case which imported a ruling which has since been invalidated. Second, CIA completely elides over the question of whether Baugh can sue it for violating ICPG 704.3 or AR 7-7—as opposed to E.O. 12,968 itself—and in doing so exposes the critical weakness in its argument, which has already been questioned by the D.C. Circuit in reversing one of the cases CIA relies upon.

### A.   The Order's Lack of Express Language Is Not Probative

CIA's argument on this point requires the Court to accept that the President can completely preclude judicial review of an agency's compliance with an Executive Order simply by inserting language stating that it is for "internal management of the executive branch" and that it "does not . . . create any right." ECF No. 10 at PageID.62-64. However, virtually all of CIA's cited cases—

6

including the only one from this Circuit—rely on the flawed analysis from one

1965 case which has since been rejected.

     In CIA's key case, *Michigan v. Thomas*, this Circuit held simply that an

executive order which "was intended 'to improve the internal management of the

Federal government' and not to confer rights judicially enforceable in private

litigation" was not subject to judicial review. 805 F.2d 176, 187 (6th Cir. 1986).

The Circuit's discussion was three sentences long and cited one case: *In re Surface

Mining Regulation Litigation*, 627 F.2d 1346 (D.C. Cir. 1980). In that case, the

D.C. Circuit based its holding on two other cases, stating, "This court has also

declared that executive orders without specific foundation in congressional action

are not judicially enforceable in private civil suits." *Id.* at 1357 (citing *Independent

Meat Packers Ass'n v. Butz*, 526 F.2d 228, 236 (8th Cir. 1975), and *Manhattan-

Bronx Postal Union v. Gronouski*, 350 F.2d 451, 456-57 (D.C. Cir. 1965)).

*Independent Meat Packers Association*, for its part, relied on *Gronouski* as well,

and that is where CIA's argument begins to unravel. 526 F.2d at 236.

     *Gronouski* has already been distinguished from cases of this type several

times, and the language used before is just as applicable here. For example, the

Northern District of California rejected a comparable argument thusly: "[T]he

authorities relied upon by defendants, for example, . . . *Gronouski*, . . . involve

executive orders which essentially deal with 'housekeeping' functions strictly

within the purview of the executive department. . . . The history of Executive

Order 11246 and its basis in the constitutional and statutory provisions noted above

make *Gronouski* wholly distinguishable from this action." *Legal Aid Soc. v.

Brennan*, 381 F. Supp. 125 (N.D. Cal. 1974) (holding that "executive orders

clearly carry the force and effect of law if they are issued pursuant to constitutional

*or* statutory authority" (emphasis added)). The Eastern District of Virginia

contemporaneously held:

> Related to the argument on nonreviewability is the position of the
> defendants that because Executive Order 11491 (as amended by
> Executive Orders 11616 and 11636) does not itself provide for judicial
> review, none can be had, citing *Stevens v. Carey*, 483 F.2d 188 (7th Cir.
> 1973), and . . . *Gronouski* . . . . Neither of those cases involved the
> Administrative Procedure Act or agency decision of the type here
> sought to be reviewed. Given the presumption in favor of reviewability,
> see *Association of Data Processing Service Organizations v. Camp*,
> 397 U.S. 150 . . . (1970), . . . the Court concludes that the decision here
> is reviewable under the Administrative Procedure Act.

*Nat'l Broiler Council, Inc. v. Fed. Labor Relations Council*, 382 F. Supp. 322, 325

(E.D. Va. 1974).

Most relevantly, the D.C. Circuit itself contemporaneously cabined the

scope of *Gronouski*, making it inapplicable to this case:

> Appellees rely primarily on . . . *Gronouski* . . . . In that case, where
> review was denied of a Cabinet officer's construction of Executive
> Order 10988, the opinion expressly pointed out that there was no claim
> of denial of constitutional rights. . . .
>
> We recognize that the federal government employee's right to organize
> is set forth in Executive Order 10988, and that implementation of this

> directive is essentially a matter of executive determination. But even
> where a privilege that has been extended is capable of unilateral
> revocation, the administration of that privilege cannot be exercised in a
> manner which clashes with basic constitutional safeguards. Judicial
> relief is available even when the privilege is not rooted in a statute.

*Nat'l Ass'n of Gov't Emps. v. White*, 418 F.2d 1126, 1129-30 (D.C. Cir. 1969). In

other words, as noted above, the due process provisions of Sec. 5.2(a) of the Order

are rooted not just in Article II, as CIA argues, but in the Fifth Amendment as well.

This accordingly implicates the underlying purpose of the APA, that through it an

aggrieved party may sue an agency for violating a law that itself carries no private

right of action. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316-18 (1979) (finding

government violations of Trade Secrets Act reviewable even where Act contained

no private right of action).

Baugh admits that the D.C. Circuit recently held that E.O. 12,968 was not

judicially enforceable in the appeal of one of the cases cited by CIA: *Moyar v.

DOD*, No. 23-5085, 2023 U.S. App. LEXIS 13146, at *7 (D.C. Cir. May 31,

2024). However, Baugh maintains that that opinion is equally flawed, in that it,

like CIA, relies primarily on *Meyer v. Bush*, 981 F.2d 1288 (D.C. Cir. 1993),

*California v. EPA*, 72 F.4th 308 (D.C. Cir. 2023), and *Romero v. DOD*, 527 F.3d

1324 (Fed. Cir. 2008). These cases are all fruits of the same poisonous tree. *Meyer*

relies on *Thomas* and *Independent Meat Packers Association*. 981 F.2d at 1296

n.8. *Romero* relies primarily on *Thomas* and *Air Transport Association of America*

*v. FAA*., 169 F.3d 1 (D.C. Cir. 1999). 527 F.3d at 1330 n.1. *Air Transport Association of America*, for its part, relies on *Meyer*, 169 F.3d at 8, as does *California v. EPA*, 72 F.4th at 318. In short, if one researches this issue deeply enough, it is revealed that most of the reasoning imported by the various courts either originated with *Gronouski* or came with little to no explanation beyond the fact that the relevant executive order stated as much, *see*, *e.g.*, *Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 575 (9th Cir. 1998).

At this point, the question becomes, what exactly is the purpose of Sec. 5.2(a), and what harm does a violation create? There are actually two related duties imposed by this section, in subsections 5.2(a)(2) and (a)(3). The former requires that an individual denied a clearance be "provided within 30 days, upon request and to the extent the documents would be provided if requested under [FOIA/PA], as applicable, any documents, records, and reports upon which a denial or revocation is based." E.O. 12,968 § 5.2(a)(2). The latter requires that the individual also be "informed of their right to . . . request the entire investigative file, as permitted by the national security and other applicable law, which, if requested, shall be promptly provided prior to the time set for a written reply." *Id.* § 5.2(a)(3). And while case law on this particular issue is extremely sparse, the Merit Systems Protection Board ("MSPB") has held that because "agencies must also comply with the procedures set forth in their own regulations" when adjudicating clearance

decisions, "[t]he Board may also review whether the agency complied with its own procedures for taking an adverse action based on a security clearance revocation." *Wonders v. Dep't of the Army*, 121 M.S.P.R. 247 (M.S.P.B. June 25, 2014). In that case, the MSPB held that the Department of Defense's failure to adhere to Sec. 5.2(a) and release the relevant records to an individual constituted potentially harmful error. *Id.*

After the case was remanded, the MSPB ultimately held that it constituted harmless error, primarily because the individual had ultimately been given the records before the appeals process was complete. *See Wonders v. Dep't of the Army*, 659 Fed. App'x 646, 647-48 (Fed. Cir. 2016). However, for the purposes of the instant case, the Court should be guided by the Federal Circuit's parting statement that the outcome was only justified "once the procedural violations had been cured by furnishing the evidence." *Id.* at 649. In other words, absent CIA "furnishing the evidence," any future decision regarding Baugh's clearance will be irreparably tainted, which makes the violation a clear due process issue. As a result, APA and mandamus review is wholly warranted.[2]

---

[2] Regarding CIA's argument that *Romero* stands for the principle that E.O. 12,968 is unreviewable, ECF No. 10 at PageID.63, the Federal Circuit cited *Romero* in *Wonders* for the principle that agency regulations provide procedural protections. *Wonders*, 659 Fed. App'x at 648. This will be addressed below.

### B.     The Lack of Express Language in the Rules Is Not Probative

After spending three pages defending the lack of judicial reviewability of

E.O. 12,968, CIA extends that argument to ICPG 704.3 and AR 7-7 in *one*

*sentence*, expecting the Court to ignore the fact that one is an executive order and

the other two are agency rules. This summary argument should be soundly rejected

for the same reason that the D.C. Circuit rejected it in *Moyar*: "We do not prejudge

the question whether this 'right' [to request records] extends to the decisions under

review or, if it does, whether it is enforceable through the APA or mandamus. But

because the district court failed to address that question, we hold that its futility

analysis was incomplete, and its decision to dismiss the complaint with prejudice

was premature." 2024 U.S. App. LEXIS at *10-11.

The reason for the D.C. Circuit's caution was obvious. As *California v. EPA*

stated, the reason that "management" executive orders are not judicially

enforceable is "because an executive order is not 'law' within the meaning of the

Constitution or the APA." 72 F.4th at 318. This is because, as the D.C. Circuit had

previously held, "executive orders *without specific foundation in congressional*

*action*" are not reviewable. *In re Surface Mining Regulation Litigation*, 627 F.2d at

1357 (emphasis added). However, both ICPG 704.3 and AR 7-7 cite specific

statutory authority *before any executive orders*, placing them distinctly outside this

category. *See* ECF No. 10-2 at PageID.73; ECF No. 10-3 at PageID.78. It is well-

established that agency regulations *with* a foundation in congressional action are reviewable, regardless of how the agency might wordsmith a disclaimer to the contrary. "To be sure, if Congress precluded non-statutory judicial review, . . . that would be another matter. But we have never held that a lack of a statutory cause of action is *per se* a bar to judicial review." *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1338 (D.C. Cir. 1996) (collecting cases).

## II.   BAUGH HAS ESTABLISHED BOTH RIGHT AND DUTY

CIA's next argument is frivolous and easily dispensed with. It argues that Baugh has no clear and indisputable right to a copy of his investigative file and that CIA has no clear duty to provide it. ECF No. 10 at PageID.65-66. This entire argument is predicated on the previous argument over whether a right has to be expressly created in an executive order or agency rule, and for the same reasons as it fails there, it fails here. CIA's own instructions for appeal state that "[y]ou may obtain your investigative file even if you do not want the security decision reviewed." ECF No. 10-5 at PageID.96.

To the extent that CIA attempts to transform this case into a case where Baugh "differs with how the Defendant acted," ECF No. 10 at PageID.66, that argument misses the point. Baugh is not expressing "dissatisfaction with how a Defendant exercised a discretionary function." *Id.* at PageID.67. That contention requires the Court to accept the idea that all FOIA/PA exemptions are

13

discretionary. However, this is not the case. An agency may *not* withhold information from a FOIA requester based on a claim that it would affect *the requester's* privacy rights. But this is what CIA did. ECF No. 1 at PageID.7 ¶ 27. An agency may *not* withhold information from a Privacy Act requester based on a claim that it would affect the agency's deliberative process. But this is what CIA did. *Id.* at PageID.7 ¶ 28. These are not discretionary issues, and they speak to a broader problem, which is, put simply, that CIA appears not to have limited itself to what it could withhold under FOIA/PA. And limiting itself to FOIA/PA withholdings is *not* a discretionary choice for an agency, especially when that agency states that "[t]he investigative file has been provided to you consistent with processing under *the Privacy Act or the Freedom of Information Act*" with no citation to any other authority for withholdings. ECF No. 1 at PageID.6 ¶ 24 (emphasis added).

## III.   ADMINISTRATIVE REMEDIES ARE A RED HERRING

CIA's last argument again confuses the issue, arguing that mandamus is inappropriate because Baugh allegedly did not exhaust his administrative remedies regarding the redactions made in the investigative file. This is a meritless argument which requires the Court to assume significant facts not in evidence and draw inferences in the defendant's favor.

First, even if the Court were to accept that administrative exhaustion was a requirement in this case, it should find that Baugh *did* exhaust the relevant administrative remedies. His undersigned counsel administratively challenged the improper redactions, and CIA sent a less redacted version nine months later. *Id.* at PageID.8 ¶¶ 33-39. When he attempted to challenge the redactions again, CIA ignored it. *Id.* at PageID.9 ¶¶ 43-45. CIA leaves to the Court's imagination what other meaningful appeal Baugh could pursue.

Instead, CIA focuses on the fact that Baugh did not raise the redactions in his appeal of the security clearance denial itself. However, it provides the Court no reason to believe that Baugh *could* raise such an issue, and the undersigned's significant experience in such cases strongly suggests otherwise.[3] *Accord Perkin v. Dep't of Air Force*, No. 88-73363, 1988 U.S. Dist. LEXIS 17737, at *3 (E.D. Mich. Nov. 23, 1988) ("However, plaintiff need not exhaust his administrative remedies if such action would be futile.") (citing *Atlantic Richfield Co. v. DOE*, 769 F.2d 771, 782 (D.C. Cir. 1984)). "When resort to the agency would in all likelihood be futile, the cause of overall efficiency will not be served by

---

[3] Should the Court be interested in the likelihood of such an appeal succeeding, the undersigned would be willing to submit extrinsic evidence—in the form of declarations from various security clearance lawyers—describing the CIA appeals process and how unlikely such an approach would be successful.

postponing judicial review, and the exhaustion requirement need not be applied."

*Atl. Richfield Co.*, 769 F.2d at 782 & n.78 (listing cases).

More importantly, however, CIA omits one critical fact about the practical ramifications of its argument. CIA suggests that Baugh should have exhausted his security clearance appeal and only *then* filed a mandamus lawsuit if he was not satisfied with the results, but if he did that, judicial review would plainly be precluded by *Egan* because he would be in effect seeking judicial review of a security clearance denial. The Court cannot find that a plaintiff must exhaust administrative remedies before pursuing mandamus relief if the exhaustion of administrative remedies would directly preclude the very relief sought.

## CONCLUSION

For the foregoing reasons, CIA's Motion should be denied.

Date: June 18, 2024

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*

16